## ROGERS v. VOORHEES.

(Supreme Court, Appellate Division, First Department.    February 11, 1916.)

PHYSICIANS AND SURGEONS ☞18—ACTION FOR MALPRACTICE—SUFFICIENCY OF
EVIDENCE. ·

In an action against a physician for damages on account of injuries sustained by plaintiff while a patient at a maternity hospital, by reason of the breaking off of the glass tip of a vaginal douche while it was inserted in the vagina of the plaintiff and permitting the broken fragments to remain imbedded in her flesh without informing her thereof, verdict for plaintiff *held* against the weight of the evidence.

[Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. §§ 34–41, 43–46, 48; Dec. Dig. ☞18.]

Dowling and Page, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Anna M. Rogers against James D. Voorhees. From a judgment in favor of the plaintiff, entered on the verdict of a jury, for the sum of $2,628.28, from an order denying defendant's motion to set aside the verdict and for a new trial, and from an order denying defendant's motion to vacate the judgment and grant a new trial in the interests of justice, defendant appeals. Judgment and orders reversed, and new trial granted.

Argued before CLARKE, P. J., and SCOTT, DOWLING, SMITH, and PAGE, JJ.

Carl Schurz Petrasch, of New York City, for appellant.
Charles O. Maas, of New York City, for respondent.

SMITH, J.    The action was originally brought against the Trustees of Columbia College and James D. Voorhees for damages on account of injuries sustained by the plaintiff while a patient at the Sloane Maternity Hospital for the purpose of confinement, by reason of the breaking off of the glass tip of a vaginal douche while it was inserted in the vagina of the plaintiff, and permitting the broken fragments to remain imbedded in her flesh without informing her thereof.    It was subsequently discontinued as to the Trustees of Columbia College, and at the opening of the trial the complaint was further amended over the objection of the defendant, setting up the claim that after the plaintiff's discharge from the hospital the defendant Voorhees continued to treat her, and negligently failed to discover the presence of the fragments of glass in her person until the month of December, 1909. She had left the hospital July 7, 1909.

It appears from the evidence that the plaintiff was attended by Dr. Voorhees during her confinement at the Sloane Maternity Hospital; that shortly after her confinement she suffered from the effects of what was subsequently found to be the presence of fragments of glass

in the wall of the vagina; that she was discharged from the hospital without the discovery of such condition; that thereafter she consulted Dr. Voorhees, and was treated by him because of her continued suffering; that the doctor made several examinations, and attributed the trouble to the failure of the stitches to heal which were necessarily taken in the person of the plaintiff after the birth, or to the fact that the gut used in sewing up the torn parts had not absorbed or assimilated in the plaintiff, and calcareous matter had accumulated.

It would hardly be profitable to enter into a discussion of the facts of this case in this opinion. The plaintiff has completely recovered. The only negligence claimed against the defendant is for his delay in making such an examination of the vaginal cavity as would disclose the foreign substance thereafter found. Two experts of standing have sworn in behalf of the defendant that it would have been poor surgery to have made such an examination as would disclose the existence of foreign substance before the time that it was actually made by the defendant. One expert, on behalf of the plaintiff, has sworn that such an examination ought to have been made three months before it in fact was made. It is always easy, after the cause of an injury has been found, to look back and say that that cause should have been sought for. To my mind the jury failed to give proper force to the fact that this defendant had never had the slightest cause of suspicion that any foreign substance could be causing this trouble. Every fact surrounding the case and its treatment would constitute almost proof of its absence. The breaking of the glass of a vaginal douche within the vagina is a circumstance so rare as not to have been reasonably contemplated at any time by the defendant, and for failure to anticipate this most unusual occurrence the defendant has been most unjustly charged with a substantial money judgment, and, what is worse, with a stain upon his professional fidelity. That this verdict is clearly against the weight of evidence I have no doubt whatever.

The judgment and orders should be reversed, and a new trial granted, with costs to appellant to abide the event. Order filed.

CLARKE, P. J., concurs.

SCOTT, J. I concur, on the ground that no actionable negligence was shown, and that the complaint should have been dismissed.

DOWLING, J. (dissenting). By its verdict in favor of the plaintiff the jury determined the controverted questions of fact in her favor, and upon such finding, which it seems to me was fairly justified by the evidence, defendant's negligence can well be predicated. Accepting the version of the facts which the jury believed, it appears that plaintiff first began to feel the intense, sharp pains in her body some 10 days after the birth of her child, and told the defendant of her suffering on the very next day, which would be June 26, 1914. She had been under the care of the defendant for some time preceding her confinement, and he had been specially employed with reference thereto, and to give her such treatment and advice as he could before the birth of her child. He knew or should have known of her general

condition, and have been aware of any abnormal change therein. He treated her for the condition which existed after the childbirth, and made an examination of the plaintiff before she left the hospital, but could suggest no cause for her suffering, save the failure of the stitches which he had inserted to properly heal. She complained of these sharp, intense pains, and of other conditions, beginning six days after her discharge from the hospital, which was on July 7th, and repeated the complaints three or four times during the month of July, giving the details of her troubles; but despite his examination, such as it was, he made no suggestion as to its cause save the familiar one of the parts stitched not healing properly.

Defendant was out of the city throughout the month of August, and when he returned plaintiff again called upon him in September, the day following Labor Day, and again complained of her pains and of other disturbances, when defendant said he could not understand it, but it must be that the stitched parts were not healing. He examined her, but discovered no reason for the condition. It was not until the early part of December, after many apparent examinations, that defendant finally made up his mind that there must be some foreign substance in the plaintiff's body apart from the calcareous material which he had thought might be there from the chromicized catgut used in the stitches failing to be entirely absorbed in the system, and then, for the first time, without apparently any further action than the making of his first really careful examination, by the use simply of a probe, which he passed into a sinus, he found what he thought was calcareous material, which he removed with a forceps, and brought out these two spears of glass, which he then gave to the plaintiff. It is quite apparent that these pieces of glass came from the nozzle of a douche which had been broken within the plaintiff's body during the process of administering the hot douches to her by the nurses in the Sloane Maternity Hospital. There is no other explanation of the presence of the glass in the plaintiff's body, as she herself never made use of a glass nozzled douche. Furthermore, when defendant removed this glass from her body, he gave the two pieces to her and said, "This is outrageous!" and going to a cabinet in his office showed her two douche nozzles, one very thin, the other thicker, and told her that the thin one was a physician's nozzle, which should not have been used except by a physician. As the result of the condition which still existed, plaintiff was obliged to submit to an operation on December 29th, when granular particles of glass were removed from her body.

There is expert testimony to the effect that the presence of the glass in the plaintiff's body should have been discovered by a proper examination, and that in any event a physician of ordinary skill and learning could have discovered its presence at the latest by September 7th. This record contains no suggestion of any explanation as to why the defendant did not use either a probe or a forceps in the sinus before November 24th, and thus discover earlier the presence of the foreign substances which for five months had been causing plaintiff intense pain and suffering and giving visible evidence of their presence in her body by the results which she described to the defendant.

The defendant's efforts to prevent the plaintiff from bringing suit either against the hospital or himself, and the arguments used by him to persuade her not to do so, show his appreciation of the gravity of the situation. The vital question in the case was whether or not the plaintiff had described to the defendant the intense, sharp pains which she was suffering, and her other physical conditions, within a comparatively short time after the birth of her child, and during her stay in the hospital and at intervals thereafter. Of course, if she did not so complain, the defendant was not chargeable with unskillful or negligent treatment of her; but the jury have found that she did complain, as she testified, and the conclusion, it seems to me, is irresistible that the defendant was guilty of malpractice.

I am therefore in favor of the affirmance of this judgment.

PAGE, J., concurs.